2344, Campbell Soup v. Gamon. Ms. Quinn, please proceed. Thank you, Your Honors. May it please the Court, the Patent Trial and Appeal Board found this case to present one of the rare instances in which evidence of secondary considerations of non-obviousness outweigh the evidence of obviousness. We submit that the termination was wrong. This Court should review it de novo and enter judgment of obviousness. This Court already has held that the differences between Gamon's claimed designs and the prior art Linn's patent are, quote, ever so slight, close quote. The Board recognized it was bound by that factual finding and in light of it correctly found that Linn's, both alone and in combination with Samway's, has the same overall visual appearance as the claimed designs. We believe that point is well illustrated by the overlay of Linn's and the claimed design that's shown on page 37 of our opening brief. The Board nevertheless held that purported evidence of copying and commercial success was so strong that it outweighed this evidence of obviousness. That decision was wrong for several reasons. First and perhaps most important, the Board found that design patent owners do not need to show a nexus between the unique characteristics. This is Judge Prouts. Why is that the most important thing since they did alternatively hold that even if it did, there's a presumption, even if there's no presumption, there's still nexus? So even if we dislodge or disagree with their global assertion that nexus doesn't even apply, you've still got a few other hurdles to get through, right? We do, Your Honor, and actually perhaps what I should say is it's most important perhaps from a precedential perspective for this court to correct the Board in its erroneous assumption that design patentees are held to a different legal standard. But for purposes of this case, you're right, I'm happy to jump straight to what the Board did find. The Board found a presumption of nexus that was wrong for two reasons. First, it misapplied the coextensiveness requirement and second, it used the same evidence of secondary considerations that this court already has found to support a finding of non-obviousness in connection with a claim of the 111 utility patent. So the same evidence that this court has found was established a nexus for commercial success in connection with a utility patent claim directed to functional features of a gravity factory. Counsel, this last point that you're making, I find very confusing. We sometimes read factual findings that come up in two different cases on the identical facts and we have to affirm both of them as supported either by substantial evidence or not clearly erroneous. This, too, this nexus concept is a fact finding. Couldn't one jury, or in this case Board, couldn't the Board find there's nexus between the secondary considerations and the utility patent and we'd have to affirm because there's not clear error? And couldn't then the Board also find there's secondary consideration between the commercial success and the design patent? And again, we might have to affirm because it's not clearly erroneous. We don't review this de novo. So isn't it possible that more than one patent could be attributed as the basis for or substantially the basis for the success? It is possible, Your Honor. It comes up in two contexts. First, there's the presumption of nexus, which is what the court was dealing with in Fox Factory. And what the court said there is yes, it's possible, but it's typically in the case where you have related patents with claims that still are directed to the essential features of the invention, which is pretty far removed from what we have here with the claims of a design patent versus claims of a utility patent. And the evidence has already been shown to support a finding of nexus as to the claims of the utility patent. But moving directly here as to whether there was evidence to support the Board's factual finding of a nexus, we submit that there simply was not, because what you have to look for is a nexus between the unique characteristics of the claim design and whatever the asserted secondary consideration is. So there has to be a nexus between the ever so slight differences between the Gammon designs and Linn's, the difference in the shape of the stops or some minor difference in proportionality. There has to be a nexus between those differences, those unique characteristics of the claim designs and the evidence that's submitted of commercial success and copying. And that evidence simply is not here in this record. Well, so counsel, my reading of the evidence is stuff like the market surveys, it's great to have that label up front where you can see it. Well, that's true for Linn's also, isn't it? It is, Your Honor. That's exactly right. And that's why we say that is not one of the unique characteristics of the Gammon invention. So would it be fair to submit to the two designs that are nearly identical, as in this case, as we previously found, that any commercial success or secondary considerations, if you're going to attribute it to the design, it really has to be attributed to those very small differences. In this case, the shape, perhaps, of the label is slightly different, right? The Linn's reference tends a little more towards square and maybe the design, claim design, tends a little more towards a vertical rectangle. But, I mean, it's not a big difference. But nonetheless, I just didn't see any of the secondary consideration focusing on the shape or particular size of the label as the basis for what made this new device so great. Is that pretty much your argument? It is, Your Honor. That's exactly our argument. That's what needed to be found, and the Board didn't find it because it's not there. Instead, we got conclusive restatements from the Board that the claim designs contributed to commercial success. But when you go into the record, there's no mention in the evidence of record as to the shape of the stops or the particular minor variations in the shape of the label area. What consumers were reacting to was the overall reconfiguration of the shelf and the fact that, yes, they could find suits more quickly, which is attributable, to the extent it's relevant to the gravity feed dispenser at all, it's attributable to the functionality of the gravity feed dispenser rather than those ever-so-slight differences between Gammon and Linz. Counsel, what about size? I thought I saw maybe just a little bit about the label being big enough to see. What about that? Is the modified version of Linz as modified? Does it have the same size? Your Honor, if you look at the overlay on page 37 of the brief, you'll see that the size of the Linz label area is almost identical to the size of the Gammon label area. There's nothing new there. And if there was something, even if there was a small difference, do you think that there's evidence of objective considerations that supports a nexus between that evidence and the claim? I do not, Your Honor, because, again, now what consumers are reacting to is the label itself, the soup label, with all the inherent goodwill that Campbell has built up in its soup trade dress. There's nothing to suggest that it's the ornamentality of the structure behind the label that consumers are responding positively to. There's nothing to suggest that consumers are paying any attention to anything ornamental about the gravity feed dispenser at all. They're happy they can find their soup, which has to do with signage and organization on the shelf. And, yes, it has to do with the evidence of the market reactions to having that label. That felt very utilitarian to me. People liked seeing the big label. It made it easier for them to find the soup they were looking for, possibly made the soup even look more appealing to purchase. But all of that seemed to be the utilitarian function of having this large label on display as opposed to the ornamentality. Because keep in mind the design patent itself is blank. It doesn't have that pretty picture of the soup on it. It's exactly right, Your Honor. This is not a case when you think about ornamentality driving commercial success, you think of it more in the context of a design patent for jewelry, for example. You're selling the design. Consumers are reacting to the design. China, right? China. People have their particular pattern of China. The plate might be identical, but you're buying it because you like the pattern. Correct, Your Honor. Whereas here, there's nothing to suggest that consumers are reacting in any way to the look of the gravity feed dispenser itself, and certainly not to whatever the perceived ever so slight differences are between that and the lens patent. And you made a similar argument with respect to the board's conclusions on copying, right? That the features they were referring to are the features that were found in prior art lens, right? Correct, Your Honor. And I would just further note on that that this court has consistently held, and as recently as a couple months ago reiterated, that you have to have something more than the fact of copying to make that action significant. There has to be something about the alleged copying that indicates that copying was driven by the non-obviousness of the claim design. And we just don't have that here. All we have here is a situation where Campbell bought dispensers from Gammon, decided to terminate that relationship and buy dispensers from another supplier from Trinity. And so, yes, Campbell had access to the Gammon dispensers because it used to be a customer of Gammon. And yes, the Gammon dispensers and the Trinity dispensers are similar to each other, just like they're both similar to lens. But there's nothing about that evidence that suggests there was some meaningful copying here of something about the Gammon designs that was non-obvious. So, in our view, that evidence is just simply not meaningful. Okay, why don't you save your rebuttal time? Let's hear from opposing counsel. Thank you, Your Honor. Thank you, Your Honor. The initial question here, of course, of the non-obviousness based on the secondary considerations, the only attack is really made on the nexus of the commercial success, which is $30 million of sale of these exact products to Campbell Soup and their imitation of R-Rack. Didn't that imitate anything they wanted in the prior art, but they didn't. They chose to copy the patented design. And then the nexus of that is established by myriad references in the opinion of the board. Certainly, Campbell Soup would present the design as in these full-page pictures of the appearance of this product on display. And the fact that the sign mimics the trade dress of the can below it is something which has not been done at all. There was an iconic Campbell Soup can from back in the days of Andy Warhol, I guess, and probably sooner or earlier. But the fact that you had this relationship between the Campbell Soup can and the sign shape above it, you had a distancing of it, which was aesthetically pleasing. All these things were the details that they copied. To say that unique characteristics are the same as these small differences that are identified, which are myriad in this design. Did you hear Chief Judge Moore's point about how the design doesn't even include the label itself, that iconic label you referred to? That's correct. The shape of the can is the thing that is being emulated. And the relationship of the can to the sign and its positioning is the thing significant. And that's what was copied. And that's what was giving it commercial success, too. And if you look at the size of the sign alone, increasing the size of the sign relative to the can is an aesthetic improvement. I can look at the different images we have here. And which piece of your evidence says that? Which pieces of your objective considerations focus on the differences between Linz and your claim design? That's not necessarily why I wanted to do that, because the question is, under L.A. Gear, what's the overall appearance? If the overall appearance is popular, it's not like people are going to identify, you know, design its value and its linkage to the desirability. And, of course, the fact that the similarity, the copying, which was never disputed. It's the overall appearance for commercial success. Because, by the way, that would allow for there to always be a nexus every single time if we adopted the rule that you're proposing. If we disagree that that is, in fact, the rule of law, and that we think that it has to focus on the particular differences, especially in a case like this, where the prior art is only ever so slightly different from the claim design, do you have any evidence under that test? If I believe the test is, there has to be a difference. And the commercial success or the objective consideration has to focus on that difference, not the overall appearance. What evidence did you present that meets that? Well, if I draw your attention to, say, the comparison of the two drawings of the two different design paths on page eight of our brief that comes up, you can see that there's the narrower design has a whole bunch of vertical stuff, vertical stops. Sorry, you said you're directing me to page eight of your brief? Yes. Page eight of your brief is your statement of issues, right? Oh, no. It's number eight, I guess it would be. I'm in the wrong brief. It's okay. Page eight of your brief. Okay, I'm there now. I'm sorry. Go ahead. In the right-hand image is the narrower design pattern, the 646 pattern, which shows all these details. These are small little things, each one of which might be considered to be slight compared to the original designs or whatever the prior art is. Each of these things is different, and together they produce an overall appearance which is different. And that overall appearance is exactly what's copied. I'm not focusing on my question. My question is, did you present any evidence at all in the objective consideration space which focuses on these differences as opposed to the overall appearance? I don't know if you understand the question, because we know in copying we would say, you copied this, but you didn't copy lint. You copied this, but you bought these racks, and they weren't the lint racks. Is that what you're saying? I mean, I don't know if you ever proved that they didn't buy any lint racks, but they didn't. Let's set aside copying. Why don't you address the other objective evidence that you submitted and answer the question? I'm sorry. I'm not trying to be evasive. I'm trying to understand your question. I'm trying to imagine what you would imagine is the sort of evidence that would have presented, but basically we showed that we sold these racks, and we know the prior art what it looks like, and that by itself shows a difference between them. We know we copied these racks. We saw the difference between that and the prior art. I don't know what else can be shown. Maybe I can frame something a little bit of a different way. Do you embrace, are you defending in order to win the board's position that no nexus is required at all? Not at all. I think the nexus was established certainly by substantial evidence here, by all the praise, all the statements about the appearance of the rack, people liking it, in combination with the way it worked, but that's a small feature. I guess we're unclear on your answer to Chief Judge Moore about the overall design being the only thing that's important, or the only thing you look at. In terms of copying, certainly the differences between Lintz and our design are the things that were copied. That's been established. In terms of commercial success, is there somewhere it says, gee, we have this signage, which is so big, or we have the Campbell Soup can, which is desirable? I think we do have certainly testimony by our expert, Terry Johnson, who had testified that the proportionality of the can to the sign is a desirable thing. The positioning of it is an aesthetic, which is apparent also. By the way, the proportionality of the can to the sign is not shown in any of these references at all, certainly not in Lintz. That includes in their rather deceptive image on page 37, where they turn Lintz into sort of a green smudge, and they leave out the can, because if they put the can in there, you would see it was a huge can compared to the sign. The proper comparison here to be made is seen in the comparison of when the can is the same height, and that's shown in our brief, page 49, which shows a comparison of what Lintz would look like if it were the width of a Campbell Soup can's height. It's a smaller thing. The sign is much less appealing and doesn't really mimic the can's shape either. Counsel, is it necessarily so that the width of the label must be the height of the can? Otherwise, functionally, it would not work right. Approximately. I think it's desirable to have the label as wide as possible and disproportionately proportional. I don't think that Lintz is as appealing. I put a drawing of what Lintz looks like and put a bunch together, because it actually loses about a sixth or so of its lateral sign shape, and it doesn't look as pleasant as ours. The question in a design patent is not moving dimensions around, because in an obviousness world, utility patents, you can change dimensions freely, but in a design patent world, you don't change them easily. The real issue is in the utility patent world, it says, do you change the functionality of this device by changing sizes? In the design world, it's different. It's a narrower patent, of course, and it says, do you make it look different? Our design looks different. Apart from the commercial success and everything, the secondary considerations, I don't think it's wrong to say that this is an obvious variation of Lintz. It's not. Lintz didn't show enough of any of the really good attributes of this device, this display, I should say. As a result, it's certainly patentable. It's certainly a difference of appearance. It makes a difference. It makes a desirable product. That certainly is a much stronger case. By the way, the obviousness case that was set out before the board, the board admitted that this is full of hindsight, which shouldn't be used at all. They construed the case as, oh my goodness, I guess we have to comply with the idea that it's so similar. In fact, they said, this is a hindsight analysis. The appearance of the can is a complete hindsight guess. I think it's an exact quote. That means that they didn't actually properly prove obviousness. That is not a correct reading of the prior art to say that it would be that. The other point, of course, is that the examiner who issued Lintz is also their expert, which is something we've asked the court to look at. It would also reduce the case even more so that it would remove it even farther from showing you obviousness, which we feel is not correct because it is hindsight based and it's improperly considered by the board under its regulations. Counsel, you asked us to look at whether or not Campbell's expert could be used. He was, in fact, the primary examiner of Lintz. I'm sympathetic to your argument, but the board should have said, no, no, we can't hear an examiner's testimony on this subject of the preclusive effect of his patent. And they should have not done it, even if we had agreed.  It was a waiver just by our, well, procedural. It was maybe a well, I served on it. It became a harmless error in the earlier appeal because the patent was found valid again. And then on remand, we did ask for it when it was scheduled. But we also see a situation where this is not a situation where you can just say, no, no, we can't do that. It's something that we're perceiving by inaction. It's something like subject matter jurisdiction more than hearsay objection. And for that reason, we don't think it can be waived. Just to be clear, you think a potential bias of an expert is akin to subject matter jurisdiction? Absolutely not, Your Honor. That's not our point at all. The point is that the patent office regulations, the employer, the agency that employs the ALJs of the PTAB and employs the examiners, says examiners are not to testify in any proceeding, period. In any proceeding regarding any matter they have to do with in their work at the patent office. And in fact, this was brought up, and it was even mentioned in the original decision by the Federal Circuit. Lintz obviously has a can because here they had all these cans cited in the prosecution history. The prosecution history of Lintz was relevant here. And therefore, this is something we should not have been talking about at all. And it was mentioned by the ALJ and one of the ALJs in the first decision, in the first oral hearing. And they were going to consider it later, but they didn't revisit. And then when they did make my motion for exclusion, they just decided, I think, to avoid the issue by letting it go through. But it is incorrect, and this should not have been the decision relying on that testimony. Or even mentioning that testimony, even hearing it or commenting on it. And I'm not sure how this would affect the whole, there's a whole issue like that Article 3, our threat issue, an agency complying with its own regulations. I don't know if there's some issue that kind of touches on that. I'm not really up to date on that, but I thought there might be some tangential effect on it. But like I said, I'm not sure what the consequence would be, one way or the other, if this was kind of enshrined as a principle that an examiner, you know, you can waive an examiner's, you can waive the agency regulations by just not objecting. Okay, counsel, anything further, or should we turn to Ms. Quinn's rebuttal? Well, I guess I'd like to ask the court to please resolve this thing until it reposes, because this has been a long process, and the procedure of this IPR is not supposed to be resolution, appeal, adjustment, another procedure. It's been five years on this thing. It's a grim consequence that, you know, for my client, that this has taken so long. And this should be resolved in deference given to the board to resolve this matter. That's it. Thank you very much. Okay, thank you, counsel. Ms. Quinn, you have some rebuttal time? Yes, thank you. First, I guess happily to address Mr. Tadgeloff's last point, this is a case that this court can put to bed, because the evidence, this court is reviewing de novo the ultimate conclusion of obviousness here. We have an incredibly strong case for obviousness. This court's factual finding that the differences between the Gammon designs and Lins are ever so slight is binding. This court, in making that determination, considered and rejected the arguments we're hearing again from Gammon, and that the board resurfaced that putting a can in Lins is hindsight, or the board did not have any evidence to suggest that the ever so slight differences in the shape of the stops or the slight proportionality of the label area had anything to do with Campbell's success in selling soup, which is Campbell's primary business, and which it has done successfully for years, including through the use of gravity-deep defenses. That cannot be, though. Address Campbell's claim. I'm going to ask you to start copying one more time for me, because it appears that what was copied was, in fact, the claim design as opposed to the Lins design. So what we have here, Your Honor, again, the evidence of copying, such as it is, is that we switched from one supplier to another. I don't think we've seen pictures of the dispensers, but we haven't seen some sort of precise measurement to suggest whether or not copying extends down to the level of ever so slight detail that we're talking about here. Do you all dispute that what was, in fact, copied was the claim design? Your Honor, the copying, when you're looking at a standard saying access and substantial similarity, I mean, the fact is, yes, we had access because they were our supplier, and yes, their dispensers are similar to the Trinity dispensers because they're both gravity feed dispensers and they're both similar to Lins. But what I would say is that, again, with this court note... Counselor, the fact that they're both gravity feed dispensers is irrelevant in an ornamental design patent case, right? Substantial similarity for copying would focus on the ornamentality, just like you're suggesting we should do for commercial success. So are they substantially similar in terms of their ornamentality? I think when you're dealing with differences that are as slight as they are here, I think that we'd all be chasing at straws to say that there's some fundamental difference because we're looking at substantial similarity to those ever so slight differences between Lins and the Gammon designs. And again, when you look at that overlay, it's hard even to see what those differences are. So I don't think you ever get outside the realm of substantial similarity, given how similar the Gammon designs already are to the prior art. But I think the broader point here, Your Honor, is as this court has held repeatedly, including earlier this year in the L'Oreal versus Olaplex case, you still have to be looking for something to suggest that the evidence of copying indicates that it was the non-obviousness of the unique characteristics of the claimed invention that was the reason for the copying. And there just isn't that evidence here. And without it, as this court again has held, you have evidence that is just not particularly meaningful on the question of secondary considerations in the absence of some other objective indicia, which we do not have here. So pending further questions from the court, I guess I just would reiterate, this court has found it's a very rare case where secondary considerations of non-obviousness are sufficient to outweigh evidence of obviousness. And this simply is not that case. We have no evidence of a nexus between anything unique about the claimed designs and any commercial success or copying. And we have not just a strong, but I would argue a compelling case of obviousness based on the similarities to Lin's, which this court already has found as a matter of fact. So we would urge this court to overrule and to reverse the board's finding of non-obviousness and enter judgment of obviousness. Okay. I thank both counsel. This case is taken under submission and this ends our proceedings for today. Thank you. Thank you, Your Honor. The Honorable Court is adjourned until tomorrow morning at 10 a.m.